**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

RANDALL HOCKENSMITH,                      Case No. 1:11-cv-173

    Plaintiff,                                     Beckwith. J.
                                                      Bowman, M.J.
vs.

FIFTH THIRD BANK,

    Defendant.

## REPORT AND RECOMMENDATION

This is a diversity action in which Plaintiff's complaint and amended complaint asserts claims for conversion and replevin against Defendant Fifth Third Bank. This matter is before the Court pursuant to Plaintiff's motion for summary judgment, or in the alternative, motion for order of possession of property (Doc. 37), the parties' responsive memoranda (Docs. 41, 43), and the arguments of counsel at the motion hearing on October 15, 2012. Plaintiff's motion for summary judgment has been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment should be **GRANTED, in part.**

**I. Background and Facts**.

*A. Plaintiff's relationship with Performance Plus and the Vehicles at Issue*

Plaintiff is a collector of classic and exotic automobiles. (Doc. 37, Ex. A, Affidavit of Randall Hockensmith,¶ 2). Between roughly 2002 and 2009, Plaintiff engaged Performance Plus Motor Sports, Inc., d/b/a Corvettes & Classics by Performance Plus ("Performance Plus"), in assisting him with enhancing his car collection. *Id.* at ¶ 3; (Doc.

41, Ex. B, Affidavit of Noel Grace, ¶ 3). Noel Grace, the owner of Performance Plus, helped locate, purchase, sell, and trade certain cars on behalf of Plaintiff. (Doc. 37, Hockensmith Aff. at ¶¶ 3-8; Grace Aff. at ¶¶ 3-8).

Typically, Plaintiff would advance the funds necessary to acquire and/or restore the vehicles and Performance Plus would: (1) locate the vehicles, (2) restore the vehicles and (3) market and sell the vehicles (Doc. Ex. 4, Hockensmith dep.60-61, 64-66). The profits would be split between Plaintiff and Performance Plus. *Id.* at 65-66. Plaintiff's share of the profits from prior sales of the vehicles would be rolled into the purchase of the next vehicle. *Id.* at 44.

This action involves the acquisition of the following three classic Corvettes using a strategy of cash payments, profit rollover and trades between Plaintiff and Performance Plus:

**"Vehicle One" - 1967 Project 435 HP Corvette convertible, Vin # 194677S106186.** The evidence shows that Plaintiff wired $140,000.00 to Performance Plus on January 12, 2007 for the purchase of a blue 1967 Corvette.[1] (Doc. 37, Ex. C). Performance Plus purchased the vehicle with the funds sent by Plaintiff and then made improvements to the vehicle. That car was ultimately sold for $180,000. Performance Plus kept half of the profit and Plaintiff used the remaining half of the profit from the sale, along with other sale proceeds totaling $135,000, to purchase Vehicle One. (Doc. 37, Ex. A., Hockensmith Aff ¶ 9) (Doc. 12 at 10-16).

**"Vehicle Two" 1967 black Corvette coupe, Vin # 194377S100405**. With respect

---

[1] A different 1967 Corvette from Vehicle One.

to Vehicle Two, the evidence shows that Plaintiff initially transferred $150,000.00 to Performance Plus on April 4, 2007 for the purchase of a red Corvette convertible. (Doc. 37, Ex. E). Performance Plus restored the red Corvette and it was sold for $230,000.00. In exchange for this red Corvette, Plaintiff received $100,000.00 and Vehicle Two on trade.

**"Vehicle Three" - 1967 white Corvette convertible, Vin # 194377S117307.** Also in April 2007, Plaintiff transferred $215,000.00 to Performance Plus, who then purchased a 1967 white HP Corvette.[2] This car was ultimately sold and the proceeds used to purchase Vehicle Three. (Doc. 12, ¶ 29-36).

*B. Fifth Third's Interest in Performance Plus and the Vehicles*

On or about August 3, 2007, Performance Plus executed and delivered to Fifth Third a Master Secured Promissory Note (the "Note"). (Doc. 41, Ex. 1 at Ex. A). The Note was issued pursuant to a Dealer Floor Plan Agreement that Performance Plus executed and delivered to Fifth Third on August 2, 2007 (the "Floor Plan"). (*Id*. at Ex. B)

The Floor Plan secured the obligations of the Note by granting Fifth Third a security interest in all assets owned by Performance Plus, including but not limited to, "all Accounts, all Inventory, all Equipment, all General Intangibles. . ." The Floor Plan's definition of Inventory includes the Vehicles, "all now owned, or hereafter acquired . . . all new and used automobiles, trucks, vans and other motor vehicles . . . whether held for sale or lease . . . . Fifth Third perfected its security interest in Performance Plus' assets by filing UCC financing statements in accordance with Ohio law.

In 2009, Noel Grace, the owner of Performance Plus, contacted Plaintiff and told him

---

[2] This 1967 white Corvette is different than Vehicle Three.

that Fifth Third wanted him to find alternative financing for his business. At that time, Plaintiff requested that the titles to Vehicles One, Two and Three be transferred to his name. Prior to this request, Performance Plus held the title to the vehicles.[3]

The titles were transferred to Plaintiff on August 10, 2009. (Doc. 37, Exs. D, F. H.). According to the Titles, one vehicle was purchased for $50,000 and the other two vehicles were purchased for $0.00. *Id.* Although the titles to the three vehicles were transferred to Plaintiff, the vehicles remained in storage at Performance Plus.

Performance Plus defaulted on its obligations to Fifth Third by, *inter alia*, failing to make the August 2, 2009 payment. (Doc. 41, Ex. 1, ¶ 7). As a result of the default, on or about October 29, 2009, Fifth Third obtained a judgment against Performance Plus. Thereafter, Fifth Third executed upon the Judgment, by requesting the Court to issue an Order allowing the Butler County Sheriff to seize certain personal property of Performance Plus. The Court issued the Order and the Butler County Sheriff seized the personal property of Performance Plus. Notably, on December 21, 2009, Fifth Third seized Vehicles One, Two and Three. Plaintiff made multiple demands for the return of these vehicles. (Doc. 37, Hockensmith Aff. at ¶ 14). However, Fifth Third did not return them.

Thereafter, on March 22, 2011, Plaintiff filed the instant action against Fifth Third for replevin, conversion and liquidated damages pursuant to Ohio Rev. Code § 2307.61(A). (Doc. 1).[4] Fifth Third's answer to the complaint also included counterclaims against Plaintiff

---

[3] According to Plaintiff, leaving the title initially in the name of Performance Plus was advantageous especially for competition purposes because, per judging rules, a car will only be graded if showcased by its titled owner. (Doc. 37, Hockensmith Aff. at ¶ 4; Grace Aff. at ¶ 4).

[4] Plaintiff filed an amended complaint on May 31, 2011. (Doc. 112).

for fraudulent transfer and for an Order from the court permitting Fifth Third to liquidate the Vehicles to partially satisfy its Judgment against Performance Plus. (Doc. 17).

Plaintiff now moves for summary judgment, or in the alternative, for an order of possession of property. Plaintiff asserts that he is the sole titled owner of the Vehicles and is therefore entitled to judgment in his favor. Fifth Third, however, maintains that it has a superior security interest in the Vehicles pursuant to its Floor Plan agreement with Performance Plus.

**II. Analysis**

**A. Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its

initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"*Matsushita,* 475 U.S. at 587 (citation omitted).

**B. Plaintiff's motion for Summary Judgment**

Because this is a diversity action arising out of events and transactions taken place in Ohio, the Court should apply the substantive law of Ohio in deciding this matter. The parties, however, disagree as to which Ohio law is applicable. Plaintiff asserts that the Ohio Certificate of Motor Vehicle Title Act controls in this matter. Applying the Act, Plaintiff asserts that as title holder of the Vehicles in question, he has the sole claim to the Vehicles.

Fifth Third, however, contends that the Ohio Uniform Commercial Code ("UCC") should be applied in determining the claims to the Vehicles. Under the UCC, Fifth Third asserts Plaintiff's interest in the Vehicles is subordinate and/or subject to Fifth Third's superior security interest in the Vehicles.

I. *The parties' competing claims to the Vehicles*

Plaintiff argues first that the Ohio Certificate of Motor Vehicle Title Act mandates that only those listed in the certificate of title have any claim, rights, title or interest to a motor vehicle in any court. In support of this assertion, Plaintiff cites to O.R.C § 4505.04, which proves in relevant part:

> (A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it * * *.
>
> (B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
>
> (1) By a certificate of title, an assignment of a certificate of title made under section 4505.032 of the Revised Code, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Revised Code;
>
> (2) By admission in the pleadings or stipulation of the parties;
>
> (3) In an action by a secured party to enforce a security interest perfected under Chapter 1309 of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest.

The Supreme Court of Ohio has stated that O.R.C. § 4505.04 applies where parties assert competing rights or competing interests in a motor vehicle. *State v. Rhodes*, 2 Ohio

St.3d 74, 75; see also *Walther v. Walther*, 2d Dist. No. 20545, 2005–Ohio–907, ¶ 17; *Grogan Chrysler–Plymouth, Inc. v. Gottfried*, 59 Ohio App.2d 91, 94 (6th Dist.1978); and *Rucker v. Alston*, 2d Dist. No. 19959, 2004–Ohio-2428, ¶ 9. "R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations." *Hughes v. Al Green, Inc.*, 65 Ohio St.2d 110, 115–116 (1981), quoting *Grogan Chrysler–Plymouth, Inc.*, 59 Ohio App.2d at 94–95. *See also Saturn of Kings Automall, Inc. v. Mike Albert Leasing*, Inc., 92 Ohio St.3d 513, 518 (2001). As noted by Plaintiff, in *Saturn of Kings*, the Court held that "[i]n determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code." *Saturn of Kings*, supra, at the syllabus.

Most recently, on October 17, 2012, the Ohio Court of Appeals determined that O.R.C. 4505.04 controlled the resolution of a dispute between an alleged owner of a vehicle and a lien claimant. *See La Gar Mktg., Inc. v. W. Fin. & Lease, Inc.*, 2012-Ohio-4800, 2012 WL 4898785. In *La Gar*, Western Finance entered into an "Equipment Finance Agreement" with Mark's Akron and Medina Truck Sales, Inc. Pursuant to the agreement, Mark's Akron purchased a 2000 Mack Truck and agreed to pay Western Finance $2117 per month for 24 months. Several weeks later, La Gar bought the truck in question from Mark's Akron. La Gar paid Mark's Akron $7000 upfront and agreed that it would pay an additional $970 per month for 18 months. Although La Gar was in possession of the vehicle for approximately nine months, La Gar never received a

certificate of title for the truck. While La Gar made its payments to Mark's Akron, Mark's Akron apparently defaulted on its obligation to Western Finance.

After La Gar had made approximately nine of the monthly payments, Western Finance repossessed the truck and subsequently sold it at auction. La Gar filed a complaint against Western Finance seeking a declaratory judgment of its superior title, and damages for conversion, trespass of chattel, and negligence. In affirming the trial's court's decision granting summary judgment in favor of Western Finance, the Court stated:

> As this case involves a dispute between the purchaser of an automobile, and the creditor for the seller who alleges to have perfected a security interest, this is a contest "between the alleged owner and lien claimant," and R.C. 4505.04 applies. *Stahl* at ¶ 6. La Gar maintains that R.C. 4505.04 is inapplicable because this case does not involve a dispute between two alleged owners of a vehicle asserting competing claims to the vehicle. However, because the precedent established in Ohio holds that R.C. 4505.04 applies in disputes "between the alleged owner and lien claimant," we are compelled to find R.C. 4505.04 applicable in this matter.
>
> The ultimate issue in this case is whether the provisions of Article 9 of the Uniform Commercial Code (UCC) that protects buyers in the ordinary course prevail over the certificate of title requirement in R.C. 4505.04. The Supreme Court of Ohio interpreted and applied R.C. 4505.04 in *Saturn of Kings*, 92 Ohio St.3d at syllabus, and held that "[i]n determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code."
>
> \*\*\*
>
> Thus, this case involves a dispute between an alleged owner and a lien claimant, and R.C. 4505.04 is controlling. While it may seem unjust that a buyer is unable to benefit from the Article 9 provisions protecting a buyer in the ordinary course, that is a matter left to the discretion of the legislature. There is no dispute that La Gar does not possess a certificate of title to the truck. As the clear language of R.C. 4505.04 mandates that a court may not recognize a "right, title, claim, or interest of any person in or to any motor vehicle" unless evidenced by a certificate of title, the trial court properly concluded that it was unable to litigate this matter and awarded summary judgment to Western Finance.

*La Gar Mktg., Inc.*, 2012 WL 4898785 at *3-4.

Here, it is undisputed that Plaintiff is the titled owner of the Vehicles. Thus, if the Court determines that O.R.C 4504.04 should be applied to the facts in this case, Plaintiff should be entitled to judgment as a matter of law.

However, unlike the facts in the cases cited above, in the present case, the Court is asked to determine competing claims between an alleged holder of superior security interest in the Vehicles and a current holder of title to the Vehicles - who acquired title after the superior security interest was perfected.[5] As such, the undersigned finds persuasive Judge Belfance's dissenting opinion in *La Gar*, wherein she disagreed with the majority's finding that O.R.C. § 4505.04 controls where parties assert competing rights or competing interests in a motor vehicle.[6] Judge Belfance's dissent notes that the opinion of the Court relied upon caselaw that was decided prior to an amendment of O.R.C. 4505.13, and states in pertinent part:

> The majority relies on the statement in *Saturn of Kings* that "O.R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants[.]" *Id*. at 518, *quoting Hughes v. Al Green, Inc.*, 65 Ohio St.2d 110, 115-116 (1981), quoting *Grogan Chrysler -Plymouth Inc. v. Gottfried*, 59 Ohio App.2d 91, 94-95 (1978). However, when the Supreme Court decided *Hughes*, R.C. 4505.13 read, in pertinent part,
>
> > Sections 1309.01 to 1309.50, inclusive, and section 1701.66 of the Revised Code, do not permit or require the deposit, filing,

---

[5] Pursuant to the Floor Plan agreement, Fifth Third only has an interest in the vehicles if Performance Plus can be considered the owner of the Vehicles at some point prior to Plaintiff's taking title.

[6] As noted above, section 4505.04 provides that no person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it.

-10-

> or other record of a security interest covering a motor vehicle. Any security agreement covering a security interest in a motor vehicle, if such instrument is accompanied by delivery of a manufacturer's or importer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument, or, in the case of a certificate of title, if a notation of such instrument has been made * * * on the face of such certificate, shall be valid as against the creditors of the debtor * * * and against subsequent purchasers, secured parties, and other lienholders or claimants.

(Emphasis omitted). In other words, when *Hughes* was decided, the way to perfect a security interest in a motor vehicle was by noting the interest on the certificate of title, and, thus, there was never a need to look beyond the certificate of title because a security interest noted on it was valid against all subsequent purchasers. *See* former R.C. 4505.13.

In 1984, the General Assembly amended R.C. 4505.13, making R.C. Chapter 1309 applicable to vehicles held as inventory for sale by a dealer. *See* R.C. 4505.13(A)(2); *see also Heartland Bank v. Nat'l City Bank,* 171 Ohio App.3d 132, 2007-Ohio-1940, ¶ 35 (10th Dist.) (concluding that R.C. 4505.14(B) is "subject to" R.C. 4505.13(A)(2)'s specific designation of R.C. Chapter 1309 as applying to security interests in motor vehicles held as inventory for sale by dealers, a finding that is consistent with the cross-reference within R.C. Chapter 1309 citing R.C. Chapter 4505 as governing the perfection of security interests in vehicles that are not held as inventory for sale by a dealer). *But see First Merit Bank v. Angelini*, 159 Ohio App.3d 179, 2004-Ohio-6045, ¶ 19-23 (3d Dist). <u>Thus, a court may have to look beyond the certificate of title to determine if a lien is valid, and, furthermore, a buyer in the ordinary course of a vehicle held as inventory by a dealer takes the vehicle free and clear of a lien</u>. *See* R.C. 4505.13(A)(2), (B); R.C. 1309.320(A). Therefore, unlike when *Hughes* was decided, the certificate of title is not dispositive of whether Western Finance had a valid lien. Thus, because the dispute in *Saturn of Kings* was between alleged owners and did not involve a lienholder and the Supreme Court did not examine the import of the amendment to R.C. 4505.13, I do not believe *Saturn of Kings* is dispositive of this case.

*La Gar Mktg., Inc.*, 2012 WL 4898785 at*7 (emphasis added).

Based on the foregoing, Judge Belfance opined that the majority erred in relying solely on the Certificate of Title Act and should have first applied O.R.C. §§4505.13 and

-11-

1309.320 to determine whether the Plaintiff was a buyer in the ordinary course and whether the vehicle was held as inventory. If the answer to those questions were yes, Plaintiff could take the vehicle free and clear of a lien. *See* R.C. 4505.13(A)(2), (B); R.C. 1309.320(A). *See also Heartland Bank v. Natl. City Bank,* 2007-Ohio-1940, 171 Ohio App. 3d 132, 869 N.E.2d 746 (Perfected security interests that automobile dealer's lender had in two vehicles held by dealer as inventory for sale were extinguished, pursuant to Uniform Commercial Code (UCC), by dealer's sale of the vehicles to two buyers who were buyers in the ordinary course of business).

Notably, section 4505.13 provides:

(A)(1) Chapter 1309 and section 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section

(2) Chapter 1309 of the Revised Code applies to a security interest in a motor vehicle held as inventory for sale by a dealer. The security interest has priority over creditors of the dealer as provided in Chapter 1309. of the Revised Code without notation of the security interest on a certificate of title, without entry of a notation of the security interest into the automated title processing system if a physical certificate of title for the motor vehicle has not been issued, or without the retention of a manufacturer's or importer's certificate.

(B) Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants…

Thus, pursuant to § 4505.13, a perfected security interest will often prevail over a subsequent motor vehicle purchaser. However, an exception to this general rule is found

in O.R.C. § 1309.320, which provides in relevant part:

> (A). . . [A] buyer in the ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller even if the security interest is perfected and the buyer knows of its existence.
>
> (B). . . [A] buyer of goods from a person who used or bought the goods for use primarily for personal, family, or household purposes takes free of a security interest, even if perfected, if the buyer buys:
>
> (1) Without knowledge of the security interest;
> (2) For value;
> (3) Primarily for the buyer's personal, family, or household purposes; and
> (4) Before the filing of a financing statement covering the goods.

Ohio Rev. Code § 1309.320 (A) & (B).

O.R.C § 1301.201(B)(9) defines a "buyer in ordinary course of business" as:

> [A] person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. A person that sells oil, gas, or other minerals at the wellhead or minehead is a person in the business of selling goods of that kind. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Chapter 1302. of the Revised Code may be a buyer in ordinary course of business. . . . .

Ohio Rev. Code § 1301.201.

Thus, a buyer in the ordinary course of a vehicle held as inventory by a dealer takes the vehicle free and clear of a lien. *See* O.R.C. 4505.13(A)(2), (B); O.R.C. 1309.320(A).

Here, Fifth Third argues that Plaintiff does not fall within the definition of a "buyer in the ordinary course" because he never took possession of the Vehicles and the issuance of the Titles occurred only after Performance Plus defaulted on its loan obligations to Fifth Third and in an attempt to deprive Fifth Third of its rights as a secured creditor. However, the statute requires possession, or the right to take possession, which Plaintiff had. As to the alleged late titling of the Vehicles in Plaintiff's name, the Court does not find that this mandates a finding that Plaintiff is not a buyer in the ordinary course. It is clear that only Plaintiff's funds were used to purchase the Vehicles, only he insured them and the Vehicles were restored to his preferences. (Doc. 37, Ex. A, Hockensmith Aff. ¶ 4,Ex. B, Grace Aff.,¶ 4; Doc. 41, Ex. 4, Hockensmith dep. at 29).

Fifth Third further argues that a "sale" did not occur and therefore the buyer in the ordinary course exception does not apply to terminate Fifth Third's security interest in the Vehicles. Fifth Third further argues that these transactions were investments and not sales Fifth Third notes that there are no agreements to purchase and no bills of sales were supplied by Plaintiff to support his claim to be an ordinary course buyer. Fifth Third has not cited any case law in support of their argument that goods purchased as an investment can not constitute a sale under the UCC and this Court has found none.

In addition, Fifth Third contends that the failure to timely apply for a certificate of title or accurately set forth the alleged consideration "paid" for the Vehicles on the Titles also supports the conclusion that Plaintiff was not an ordinary course buyer. Plaintiff testified that these vehicles were purchased purely to enhance his collection of exotic and classic automobiles. (Doc. 37, Ex. A, Hockensmith Aff. ¶ 2; Doc. 41, Ex. 4, Hockensmith dep. 19-20). And the Plaintiff and Performance Plus had a history of buying, trading and

selling cars in this manner. (Doc. 37, Ex. A, Hockensmith Aff., ¶ 3-8, Ex. B, Grace Aff. ¶ 3-8). Fifth Third also notes that the only "evidence" that Plaintiff is an ordinary course purchaser of the Vehicles are his self-serving statements and the Titles. However, the Court finds that the titles are a significant piece of evidence in support of Plaintiff's claim.

Upon careful review, the undersigned finds that the undisputed facts establish that Plaintiff was a buyer in the ordinary course when he purchased the Corvettes at issue through Performance Plus. Thus, Plaintiff is entitled take the Vehicles free and clear of Fifth Third's security interest.[7] *See* R.C. 4505.13(A)(2), (B); R.C. 1309.320(A). *See also Heartland Bank v. Natl. City Bank*, 2007-Ohio-1940, 171 Ohio App. 3d 132, 869 N.E.2d 746. Plaintiff is therefore entitled to judgment as a matter of law in this regard.

*II. Plaintiff's remaining claims*

Plaintiff also claims that Fifth Third is liable to him for civil theft. O.R.C. §2913.02(A) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat; (5) By intimidation." Although this Court found that Fifth Third does not have a valid security interest in the Vehicles, the Court cannot conversely find that there are no genuine issues of material facts as to Fifth Third's liability for civil theft. Other than the assertion that Fifth Third did not have

---

[7] In light of the undersigned finding that Plaintiff is a buyer in the ordinary course of business, Fifth Third's assertion that it holds a superior interest because the Vehicles in question were held as inventory for sale by Performance Plus is not well-taken. Even if the Court found the Vehicles to be inventory, Plaintiff would still prevail.

Plaintiff's consent, there is no evidence to support the contention that Fifth Third acted knowingly when it obtained or exerted control over the Vehicles. In fact, there is evidence that shows that Fifth Third held an honest belief that the Vehicles belonged to Performance Plus and thus were covered under the Floor Plan. *See Butler County Common Pleas Court Seizure Order.*

Plaintiff finally argues that he is entitled to immediate possession of the Vehicles pursuant to O.R.C. §2737.01, et seq, which provides an avenue for requesting possession of specific property in a civil action while awaiting judgment. However, since this Court is recommending judgment as to Plaintiff on his claim of having a superior interest in the Vehicles over that of Fifth Third, the Replevin statute is no longer applicable and the Court recommends that immediate possession of the Vehicles be given to Plaintiff.

### C. Fifth Third's Counterclaims

As noted above, Fifth's Third's answer to Plaintiff's amended complaint included counterclaims for fraudulent transfer and to establish interest in and rights to liquidate the Vehicles to partially satisfy its Judgment against Performance Plus. In light of the undersigned's finding that the undisputed facts establish that Plaintiff is a buyer in the ordinary course of business and the subsequent recommendation that he should take the vehicles free and clear of Fifth Third's security interest, Fifth Third's counterclaims should be dismissed.

### III. Conclusion

In light of the foregoing, **IT IS THEREFORE RECOMMENDED THAT:** Plaintiff's motion for summary judgment (Doc. 37) should be **GRANTED in part,** as outlined above.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RANDALL HOCKENSMITH,  Case No. 1:11-cv-173

    Plaintiff,  Beckwith. J.
 Bowman, M.J.
vs.

FIFTH THIRD BANK,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).